

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DSS
F.#2008R01591

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

May 24, 2012

**By ECF**

The Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Oscar Ruiz Correa
     Criminal Docket No. 09-154 (SLT)

Dear Judge Townes:

   The government writes in advance of the defendant's sentencing, which is scheduled for May 25, 2012 at 10:30 a.m., and in response to the defendant's sentencing submission, which was filed yesterday.  On October 7, 2011, the defendant pled guilty before the Honorable Marilyn D. Go to Count Two of the above-captioned indictment, charging him with participating in an international cocaine distribution conspiracy, in violation of 21 U.S.C. § 963.  This offense carries a statutory minimum sentence of ten years.  (Presentence Investigation Report ("PSR") ¶ 45).  However, because the defendant has satisfied the safety valve provision of 18 U.S.C. § 3553(f), this mandatory minimum is inapplicable.  In addition, the defendant's adjusted offense level is 27 and his applicable criminal history category is I, which results in an advisory sentencing range of 70 to 87 months.  (PSR ¶ 46).  Both parties agree that this Guidelines calculation is accurate.

I. Offense Conduct

   The defendant was a member of a prolific Colombian cocaine trafficking organization led by Juan Carlos Ramirez-Abadia ("Ramirez").  (PSR ¶ 7).  Ramirez, one of the principal leaders of Norte Valle Cartel, employed hundreds of individuals

who manufactured and transported large quantities of cocaine from Colombia to Central America, for ultimate re-sale in the United States. (PSR ¶¶ 6-7). Ramirez's organization included assassins and debt collectors, money launderers, and individuals assigned to bribe corrupt officials. (PSR ¶ 6). Between approximately 1990 and 2009, the organization smuggled tens of thousands of kilograms of cocaine from Colombia, most of which was destined for the United States. (PSR ¶ 7).

The defendant participated in this drug trafficking conspiracy from approximately 1995 until his arrest in Colombia in October 2008. (Id.) A former Colombian law enforcement officer, the defendant began by assisting one of Ramirez's lieutenants in fraudulently obtaining government documents for members and associates of the organization in exchange for payment. (Id.) These documents included passports and other travel documents. (Id.) Beginning in 2004, after the individual for whom the defendant had worked was murdered, the defendant began performing other functions for the organization. (Id.) Specifically, the defendant passed payments to corrupt Colombian law enforcement officials. (Id.) In return, the defendant sometimes conveyed information from these officials to Ramirez's underlings. (Id.)

Because the defendant played a limited role in the conspiracy and largely performed discrete tasks at the direction of others, the government agrees that the defendant is entitled to a two-level minor role reduction pursuant to U.S.S.G. § 3B1.2(b). Therefore, beginning with a base offense level of 38, see U.S.S.G. § 2D1.1(c)(1), subtracting two levels for minor role and four levels pursuant to the base offense adjustment of Section 2D1.1(a)(5), subtracting two levels for the "safety valve," see 2D1.1(b)(16), and three levels for acceptance of responsibility, the defendant's overall adjusted offense level is 27. Because the defendant is in criminal history category I, his advisory range of incarceration is 70 to 87 months. (PSR ¶ 46).

II. Credit for Time Served in Colombia

The defendant was arrested in Colombia in October 2008 and charged with narcotics offenses that were related to the instant conspiracy. Indeed, these charges stemmed from the same investigation that gave rise to the instant charges. The instant indictment was returned in March 2009 and the defendant was extradited to the United States in October 2010. The defendant remained in custody in Colombia from October 2008 until his extradition to the United States.

2

The government agrees that the defendant should receive credit against his instant sentence for the approximately 24 months he spent in custody in Colombia from October 2008 to October 2010.  The Bureau of Prisons would presumably generally credit a defendant's sentence for time served awaiting extradition.  See 18 U.S.C. § 3585(b)(1).  Here, however, the defendant was prosecuted and convicted for related Colombian offenses while the extradition proceedings were underway.  To avoid an unjust result, the government maintains that it would be appropriate to reduce the defendant's instant sentence by 24 months to account for all of the time he spent in Colombian custody.  In addition, to avoid double-counting or any further confusion, the government respectfully submits that the Court should indicate upon the Judgment of Conviction that the Court recommends that the Bureau of Prisons run the instant sentence from the date the defendant arrived in United States custody in October 2010, and that the Court has already reduced the sentence for time spent in Colombian custody while awaiting extradition.[1]

III.  The Appropriate Sentence

In Kimbrough, the Supreme Court reiterated that, "[w]hile rendering the Sentencing Guidelines advisory, United States v. Booker, 543 U.S. 220, 245 (2005), we nevertheless preserved a key role for the Sentencing Commission . . . . [D]istrict courts must treat the Guidelines as 'the starting point and the initial benchmark,' Gall v. United States, 128 S. Ct. 586, 596 (2007) . . . . [and] the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough,

---

[1]  The government does not agree that the Court should further reduce the defendant's sentence by 18 months to account for time the defendant has served in federal custody awaiting sentencing, or by 5 months to account for "good time" credit the defendant would have received had he been in federal custody since 2008.  See Defendant's Letter, dated May 23, 2011, at 4-5.  Any possibility that the Bureau of Prisons would erroneously fail to credit the defendant for time served awaiting sentencing can be solved by simply noting, on the Judgment of Conviction, that the Court recommends that the sentence computation begin in October 2010.  In addition, awarding a reduction for good behavior for time spent in custody in a foreign jurisdiction (especially where, as here, the Court is not privy to any information regarding whether the defendant in fact abided by the rules of the relevant institution) would not serve the purposes for which good behavior credit is designed.

128 S. Ct. at 574 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).  Thus, "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a). . ." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

Here, the defendant participated in a vast international drug trafficking conspiracy responsible for the shipment of tens of thousands of kilograms of cocaine into the United States.  While the defendant's role in the offense was relatively minor, as a former Colombian law enforcement officer he betrayed the trust that his government had bestowed upon him and exploited his former government contacts to assist his criminal associates.  In addition, the defendant previously shot and killed his girlfriend in Colombia.  (PSR ¶¶ 24-25).  Because this offense occurred in a foreign jurisdiction, it has not resulted in the imposition of any criminal history points.

In sum, the seriousness of the offense and the need for both general and specific deterrence warrant a sentence within the applicable Guidelines range of 70 to 87 months.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  /s/ Daniel S. Silver
Daniel S. Silver
Assistant U.S. Attorney
(718) 254-6034

cc:  Daniel Nobel, Esq. (By Email & ECF)